RANDY S. GROSSMAN
United States Attorney
JOSEPH J.M. ORABONA
California State Bar No. 223317
JENNIFER MCCOLLOUGH
Texas State Bar No. 24099903
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7951/8773
Email:  joseph.orabona@usdoj.gov

Attorneys for the Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIMI BOZZO (1),<br>VINCENT BOZZO (2),<br><br>Defendants. | Criminal Case No. 20CR2944-GPC<br><br>**THE UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:   June 13, 2022<br>Time:   8:30 a.m.<br>Place:  Courtroom 2D<br><br>The Honorable Gonzalo P. Curiel |
|---|---|

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Joseph J.M. Orabona and Jennifer McCollough, Assistant United States Attorneys, hereby files its Sentencing Memorandum in the case against defendants MIMI BOZZO and VICENT BOZZO (collectively "Defendants"). This memorandum is based on the files and records of the case and the Presentence Reports.

//

# I
# INTRODUCTION

A tax preparer is supposed to help you navigate the complex world of tax returns and tax laws, not inflate your income and steal money from the United States Treasury. While most tax preparers provide honest, high-quality service, there are some who are dishonest, unscrupulous and who prey upon their clients, especially those clients who have little or no experience with the United States tax laws and are desperate for income. Every year, these bad actors use their clients and compromise tax returns in ways that can severely harm taxpayers and the Internal Revenue Service ("IRS").

That is exactly what happened in this case. Mimi and Vincent Bozzo, a married couple, conspired and devised a return preparation scheme to defraud the IRS by filing false and fraudulent tax returns. To avoid detection and prosecution, the return preparation scheme focused on recruiting unemployed people from public assistance offices, and coaching them to produce false income documentation to turn them into lucrative, repeat customers, earning fees ranging from $100 to $1,500 for simple tax returns. Most of the taxpayers were homeless, low-income at-risk individuals with no W-2 or 1099 income, or living in shelters, and were targeted by the Defendants as the IRS was unlikely to find them. But the IRS found the taxpayers, and many of them provided sworn testimony under oath.

Generally speaking, the taxpayers stated that Vincent and Mimi Bozzo approached them at shelters and public assistance offices, telling them they could get tax refunds when handing them their business cards. After recruiting the "taxpayers," Vincent and Mimi met them at a local Burger King (at first) or at the office they rented in El Cajon (later) and showed them a chart to aid in selecting the "correct" amount of income for their tax returns depending on the number of dependents. Next, Mimi and Vincent told the taxpayers to create receipts to substantiate their purported "babysitting" or "cleaning" business income. At times, Mimi Bozzo even provided names for housecleaning services. The Defendants offered to pay a $150 or $250 referral fee if someone brought in another taxpayer with no reportable income. Some of the taxpayers referred friends and family to Defendants.

During the scheme, Vincent Bozzo filed 63 false tax returns resulting in the IRS dispersing approximately $228,130.45 in fraudulent tax refunds. Mimi Bozzo filed 135 false tax returns resulting in the IRS dispersing approximately $541,172.95.

## II
## SENTENCING RECOMMENDATIONS AND ANALYSIS

At this point, it is well-established that the Guidelines are advisory rather than mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005); *Gall v. United States*, 128 S.Ct. 586 (2007). Nonetheless, the Supreme Court has held that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing" in accordance with the factors set forth in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 264. Once the advisory Guidelines have been determined, the Court will look to the sentencing factors in § 3553(a) to determine an appropriate sentence for the defendant before the Court.

### A.   The Advisory Guideline Calculations

The United States has set forth the applicable advisory Guidelines agreed upon by the parties in each of its Sentence Summary Charts for Mimi and Vincent Bozzo. While the probation officer applied the relevant conduct provisions of the Guidelines, the parties reached an agreement that each defendant would take responsibility for the number of false tax returns that they filed and the corresponding loss amounts. As such, the United States requests that the Court apply the Guideline calculations agreed-upon by the parties. Should the Court disagree and apply the Guidelines recommended by probation, the United States would then recommend a variance under § 3553(a) to arrive at the advisory Guideline range for each defendant – a range of 24 to 30 months for Mimi Bozzo and 18 to 24 months for Vincent Bozzo. These are the appropriate advisory Guideline ranges for each defendant.

### B.   The § 3553(a) Factors

After determining the applicable Guidelines, the Court turns to the other factors set forth in § 3553(a). First, the nature and circumstances of the offense are aggravated and serious given the victims preyed upon by the Defendants and the extraordinary loss caused to the

public by diverting more than $228,000 and $541,000, respectively, in taxpayer dollars because of the Defendants' fraudulent scheme. Defendants executed their tax fraud scheme for many years, which resulted in false tax returns filed for tax years 2008 through 2016.

Second, the history and characteristics of each defendant are detailed in their respective PSRs. The balance of mitigating and aggravating factors for each defendant supports the United States' recommendation at the low-end of the Guideline range.

Third, the need for the sentence imposed and the kinds of sentences available are key elements of sentencing. In white-collar crimes, such as tax fraud, Courts have recognized the need for just punishment, which includes a prison sentence, to "equalize punishments for 'white collar' and 'blue collar' crime." *See United States v. Thurston*, 358 F.3d 51, 80 (1st Cir. 2004). Careful consideration of the advisory Guidelines is crucial in a white-collar case such as this which already takes into account that people who typically commit a white-collar crime are "educated people with responsible jobs." *Thurston*, 358 F.3d at 81. As the Third Circuit has observed in the context of a fraud case, Congress has expressed a "disinclination towards leniency for white collar criminals . . . and its frustration with the fact that these defendants receive probation more often than other offenders who commit crimes of comparable severity." *United States v. Ali*, 508 F.3d 136, 149 (3d Cir. 2007) (citations omitted).

Therefore, a probationary sentence for either defendant is unreasonable. Mimi and Vincent Bozzo stole more than $228,000 and $541,000, respectively, from law-abiding, taxpaying citizens. Such an extraordinary theft requires just punishment. White-collar offenders like Defendants "should not escape punishment simply because [she/he] is better-positioned to make a sympathetic presentation to the district judge." *United States v. Edwards*, 622 F.3d 1215, 1217 (9th Cir. 2010) (Gould, J., dissenting from denial of rehearing *en banc*). Moreover, courts in other circuits have reversed probationary sentences in cases where the victims (*i.e.*, U.S. taxpayers) suffered a similar loss as in this case or where the Guideline range was similar. *See, e.g., United States v. Ali*, 508 F.3d 136, 149 (3d Cir. 2007) (observing in the context of a fraud case, Congress has expressed a "disinclination towards leniency for white collar criminals . . . and its frustration with the

fact that these defendants receive probation more often than other offenders who commit crimes of comparable severity."). Under the facts of this case, no prison sentence would be a reward for such an extraordinary theft of taxpayer funds. Instead, a prison sentence will install confidence in the public that white-collar criminals will receive the same just punishment for stealing taxpayer dollars from law-abiding citizens.

Fourth, general and specific deterrence are also important considerations in sentencing the Defendants. A prison sentence is necessary to deter other tax preparers – whether as certified public accountants or self-employed professionals – from engaging in similar tax-related crimes. Crimes by such professionals are particularly difficult to expose and prosecute. Accordingly, this is an area of crime that requires robust deterrence. *See, e.g.*, *United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished) (general deterrence is "especially compelling in the context of officials abusing their power"). No prison sentence will fail to adequately deter similar criminal conduct.

[D]eterrence occurs where a potential offender will commit a crime only if the benefits exceed the expected sanction." *United States v. Harder*, 144 F. Supp.3d 1233, 1240 and n.5 (D. Or. 2015) (citing Peter J. Henning, *Is Deterrence Relevant in Sentencing White-Collar Defendants?*, 61 Wayne L. Rev. 27, 40 (2015)). "The greater the perceived certainty, severity, and swiftness of punishment, the lower the crime rate will be." *Harder*, 144 F. Supp.3d at 1240 and n.6 (quotation marks and citation omitted). "It is also very difficult to predict deterrence because different thought processes are at play in motivating crime." *Id.*

The legislative history of Section 3553 reveals that Congress "viewed deterrence as 'particularly important in the area of white collar crime.'" *United States v. Livesay*, 525 F.3d 1081, 1093-94 (11th Cir. 2008) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). In particular, in enacting Section 3553, "Congress was especially concerned that prior to the Sentencing Guidelines, '[m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment.'" *Martin*, 455 F.3d at 1240 (quoting S. Rep. No. 98-225, at 76 (1983), reprinted in, 1984 U.S.C.C.A.N. 3182, 3259). / /

In this case, Defendants engaged in a multi-year tax fraud scheme. Not only did Defendants engage in fraud, but they recruited particularly vulnerable victims, coached them to lie, and assisted them in falsifying records. In essence, Defendants shamelessly assisted these vulnerable taxpayers and stole money from law-abiding taxpayers – money controlled by the IRS. Defendants personally profited from their crimes by charging more than a reasonable preparer would charge for filing such a simple tax return. To achieve the goal of specific deterrence, the Court should sentence Mimi and Vincent Bozzo to the prison terms recommended by the United States.

General deterrence cannot be achieved in this case without a prison sentence for the Defendants. In *Martin*, the Eleventh Circuit noted that "[b]ecause economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" 455 F.3d at 1240 (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing after Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)). The Eleventh Circuit when on to reason that "[d]efendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id.* If a lawyer, accountant, trustee or white-collar criminal could steal millions of dollars, spend the money lavishly on himself, serve no prison sentence, and continue to be free to start a new life, there is little incentive for that person to think twice before once again engaging in a similar scheme to defraud.

As this Court should view it, the message of a meaningful period of incarceration in a federal penitentiary would send to would-be-white-collar criminals is that they stand to lose not only their liberty but a great deal of their livelihood. A prison sentence would provide the necessary level of general deterrence to other lawyers, accountants, tax preparers, and professionals in similar situations because these others may look to Defendants' case as part of a cost-benefit analysis. If these other people determine that the risk is worth the reward, then they, too, may succumb to the temptation to steal money from the IRS for their own personal gain knowing that they can avoid prison time for their crimes.

### C. Restitution

Section 3553(a)(7) provides for the Court to consider the need to provide restitution to any victims. Pursuant to the terms of each defendant's plea agreement, the parties have <u>jointly</u> agreed to the amount of restitution owed by each defendant. The parties agree that the "victim" of each defendant's crimes is the Internal Revenue Service (IRS). In summary, the Court should order each defendant to pay the following amount of restitution:

| Defendant | Amount | Victim |
|---|---|---|
| Mimi Bozzo | $541,172.95 | Internal Revenue Service |
| Vincent Bozzo | $228,130.45 | Internal Revenue Service |

The United States will provide the Court with proposed restitution orders for Mimi and Vincent Bozzo at the time of the sentencing hearing.

## III
## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence Mimi Bozzo and Vincent Bozzo in accordance with its recommendations set forth in the United States' Sentencing Summary Charts.

DATED: June 6, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney